Our next case for argument this morning is Hinesley v. Knight. Mr. McClure May it please the Court, I'm Michael Osbrook. I represent Bill Hinesley in this appeal, a 2254 habeas case from a state court conviction in Indiana. Mr. Hinesley's case was entirely defensible. It was so defensible that the morning of trial the state offered a plea to a Class A misdemeanor battery with probation and no requirement that he register as a sex offender. This case was defensible by the entirely normal and standard use of three principal tools of the trial lawyer. One, keeping out inconsistent statements. Two, keeping out vouching testimony. And three, proper impeachment. You know, Mr. Osbrook, it seems to me that the evidence in this case made for a very rich defense case. Why wouldn't it, however, be a legitimate strategic decision for defense counsel to say, let's put all of the various witness statements into evidence in full. Let's air this case out thoroughly because the case is full of reasonable doubt. I have two answers to that, Your Honor. The first is that ex-ante, Mr. Hinesley's had no idea what V.V. or Billy were going to testify to. Therefore, letting in Billy's statement on the theory that he's going to impeach him with it via Detective Downing before Billy ever testifies and letting in V.V.'s statements through Detective Downing before V.V. ever testifies, he didn't know, for example, V.V. denied anything happened at her deposition. Given the state's offer before trial, he didn't know that V.V. wasn't going to get up on the stand, deny anything happened, and everybody would be going home early. The other problem with letting all of these statements in is, the true problem in the statements is the prior consistent statements that were objectionable. As we say in our brief, any lawyer wants to get the inconsistencies in front of the trier of fact. The problem was seven repetitions, all of them inadmissible, on proper objection of the accusation. To the extent that that made a difference, one piece of the record that's not referred to in our brief in finding Mr. Hinesley guilty, Judge Craney said, to say this case is not easy is a total understatement. Well, without the prior consistent statements, it might have been a lot easier. I want to speak a little bit about the so-called judicial temperance presumption as it applies to Strickland prejudice in this case. I don't know what it means to say that we assume that and then to say that the judge ignored all of the hearsay in this. We assume that the judge ignored all of the hearsay in this case. It was, on the one hand, Mr. Hinesley's lawyer's strategy to get the evidence in that the Indiana Court of Appeals then says the judge ignored, but it was a reasonable strategy for the lawyer to let this evidence in that he knew the judge was going to ignore. Under the evidence rules, the hearsay was absolutely admissible without a proper objection. And there is absolutely no reason in the record to think that the judge did not consider it. I also believe that the judicial temperance presumption, and particularly the Indiana Court of Appeals comment that it could imagine nobody better than Judge Craney, since she sat on the trial, to come to a decision in this case because there is the provision in Strickland that, at least with respect to prejudice, unless the information comes from the record of the proceeding under review, the particular thought process of the decision maker is not to be considered. And I think the perfect example where it's all right to consider something that happened before is where you have, for instance, a jury that sends out a note that says, we're deadlocked. And the judge sends the jury back saying, well, you're deadlocked, but go think about it some more. I think it's fine for a court then doing Strickland prejudice later to say, oh, this was a close case. We can tell that from the proceeding under review, the trial, because the jury sent out this note. Ex post, having Judge Craney say, I found talking about her thought process, which she actually does very little of, the Indiana Court of Appeals does it for her, actually. I think that's contrary to Strickland. I really have nothing, it's really laid out in the briefs. If the court has any other questions, I will be happy to answer them, and otherwise I'll reserve my time for rebuttal. Certainly, Mr. Rossberg. Mr. Robel. Thank you, Your Honor, and may it please the court. I think Petitioner here is grossly overstating the record when he says that this case was entirely defensible. Here, this was not really a he said, she said case. We had the testimony of V.V. making the accusations and the testimony of Billy. Basically, even at trial, still saying that the circumstances of the touching occurred, that they were alone together in the room. At trial, the only thing he changed is he did not remember whether or not he saw V.V. pull up her pants. And that's opposed to the defendant's So, and he stated at trial. I mean, the facts of this case are really something. Well, he testifies consistent with his prior statement on everything except for whether or not he remembers. And when pushed by the state on why he's changing his testimony about no longer remembering, asked why he if he's just doing it because he wants to get his father out of jail, he pretty much collapses at that point and says he thinks it's time. He just wants this to be over. He doesn't even deny at trial that he's only changing a small amount of his testimony from his statement to police because he wants to see his father out of jail. Well, one disadvantage about allowing the hearsay statements in as substantive evidence rather than impeachment is that it really did allow the state to preview V.V.'s and Billy's and testimony before they actually got on the stand. Didn't that help the state a great deal by essentially reinforcing their trial testimony before the fact? Well, it may have to some extent, but I think defendant, by his strategy, wanted to show that there was a insufficient police investigation. And he explained that before any testimony happened during his opening statement, that he thought this was a bad investigation, which Indiana courts have then allowed course of investigation testimony. And that's mainly what this was. I think his strategy also benefited in several ways by allowing that hearsay to come in. It was the impeachment. It was the course of investigation, which were permissible reasons, but it also showed the extent of the investigation. It opened the door to the testimony about Billy and V.V.'s relationship, which would have otherwise been probably kept out by the rape shield. At least that was the defense counsel's argument. And it also brought in many minor inconsistencies, which probably would have not come through mere impeachment. For example, the testimony in the statement was that the petitioner ordered V.V. to pull down her pants, but then she testified that he pulled them down. There's inconsistencies between the police statement and V.V.'s trial testimony about what ended the sexual act. There's inconsistencies about the duration of the act. And I think there's also worth noting that there's a possibility some of this evidence would have come in anyways, first for the course of investigation, but also because V.V.'s statement probably could have come in as a present sense impression, as it happened immediately after the sexual act. But why would there be a legitimate reason vouching for V.V. and V.V.'s credibility? I can see a strategic reason to let in Detective Downing's vouching, you know, in order to attack him as putting too much faith in V.V. But I'm not sure I can see any reason with respect to Billy. Well, I think it's important to note that the Indiana Court of Appeals never found this to be vouching. They said, well, even if we assume there's vouching, we're dealing with a trial court, so all the risk that we talk about in our other cases of a juror not knowing to disregard vouching does not come into play here. But if you look at the statement from Detective Downing, the state did not ask a question that would suggest a vouching answer. Instead, they asked what her demeanor was, and the officer replied, she was childlike, protected, guarded, younger than her physical age, she seemed believable. So that was arguably demeanor. I think Billy comes closer to vouching, but as the defense counsel explained, he let that go because he was going to then change his testimony to some extent at trial, so it created yet another inconsistency that he went from believing her, which probably would have been inferred from the circumstances anyways, as he was the complainant to the police, he was the one who had just guarded his sisters all night with a shotgun from their father. So I think under these circumstances, there's at least not prejudice, and it's probably within the realm of reasonable strategy to allow that in there, and again, show A, the changes in testimony, and B, to show what they explained as part of the strategy was that the officer was maybe gullible and just believed the children at face and didn't really do enough of an investigation, which was a major part of their argument, both in opening and in closing, so it helped that. And again, because we're dealing with a bench trial here, I don't think there's any genuine concern. In fact, we know that the charges that only came in through hearsay, the court entered a directed verdict on both of those, the allegations regarding fondling and deviant sexual conduct, so it's clear from the record that the court was only considering V.V.'s testimony. She made a specific credibility finding as part of her judgment, I believe V.V., I don't believe the petitioner. She reiterated that in denying post-conviction relief, saying that V.V.'s conviction would have been sustainable, even though the hearsay came in. So I don't think there's... Is it true, forgive me, I'm changing, you want to finish your thought because my thought is on a different... No, Your Honor, go ahead. Is it true that Mr. Hinesley rejected a plea offer of time served? Yes, Your Honor, that was explained in the post-conviction hearing that the prosecutor was concerned on the day of trial that V.V. would not be able to testify at all, so effectively the state would have no evidence. So basically, to cover that risk, the prosecutor offered a misdemeanor with time served, and the defense would not accept it. Which would have been how much time? Refresh me. I believe he had been in jail for less than a year at that point. It would have been six months or something that he would have actually served. So he was offered six months, rejected it, and is now serving 30 years. With part of it suspended, yes. And I think the only reasonable way to look at that is not that the state did not believe in its case, but it was worried that the victim, who was the most important testimony, her testimony is the only testimony of the circumstances of the crime, because the other witness, Billy, came in after the sex act was over and at most saw her pulling up her pants or kind of stand straightened up. So the state was concerned it might not have any evidence, but in the end, it did have the evidence that supported the A felony, and the court found V.V. to be credible. What was the reason she would not testify? She was a child. She was nervous. She was afraid. She explained that's why she took back her during the deposition about a month before trial, why she denied that the sex act happened because of that fear and wanting to return to the family. She was a foster child. This was what she considered to be her family, even at that time, and really was bothered that she was no longer allowed to have that family. At that point, was she with the grandfather? Not at that point. About two weeks after the incident, the crime happened, is when she was completely taken away from the grandparents, and she had left the petitioner's household shortly before the crime happened and was just visiting there overnight. I'm sort of confused at where she was when. Obviously, there's three Angeles involved here, and at some point, she went to the grandfather. Right, and that was right before the crime happened. She moved in with the grandparents, and she was there only for a couple of weeks. At some point, the grandparents decided because of these accusations, they could no longer keep her as a foster child. If there are no further questions, the respondent asks that the judgment of the district court be affirmed. Thank you, Counsel. Anything further, Mr. Osberg? Briefly, Your Honor. My friend just did it again, what happened in the trial court. He just told this court that Billy's trial testimony was consistent with his prior statement to a large extent, relying on Billy's prior statement that should never have come in. Secondly, the respondent really shouldn't be heard in this case to argue that Billy's videotaped statement, which is clearly an admissible hearsay, was unimportant because in closing argument, the prosecution argued that it was key, that it corroborated V.V.'s story. The prosecution actually argued that V.V.'s story corroborated Billy's statement. With respect to Judge Craney directing a verdict on the fondling charges, the only evidence of which was hearsay offered through Detective Downing, certainly another interpretation of that is that Judge Craney was not going to convict Mr. Hinesley of anything about which V.V. herself did not testify, so that if there was only hearsay admitted to support a charge, she was not going to find Mr. Hinesley guilty. But that does not mean that she did not find the seven times repeated hearsay accusations against Mr. Hinesley repeated, that she did not consider those. With respect to whether V.V.'s statement to Billy repeating the allegation was admissible under some other evidence rule, I think that A, that argument was never made by anybody at trial. B, it was never made by anybody in the appeals. C, it was not mentioned by the Indiana Court of Appeals. And this is the first time, I believe, that the respondent in this court has raised this argument that it might have been admissible as a present sense impression. How old is V.V. now? This was two. V.V. is about 20 or so years old. Yes, Your Honor. The state certainly tried. The important thing to remember from Mr. Hinesley's perspective in this case is the problem is not the prior inconsistent statements. The problem is the prior consistent statements. Proper impeachment would have been getting a transcript of Billy's statement, video statement, getting a transcript of V.V.'s statement, having their depositions ready, and after they testify, once you know what they're going to say, because again, V.V. might have, the respondent has already said, V.V. might not have testified at all. That's one reason at least the state might have offered the plea agreement the morning of trial. The proper method of impeachment would have been to stand there and go line by line through their prior statements once Mr. Hinesley's lawyer knew what those statements were. Instead, he let in these seven instances of the repeated hearsay as substantive evidence of Mr. Hinesley's guilt and the vouching testimony. If there are no further questions. And the court appreciates your willingness to accept the appointment in this case and your assistance to the court as well as your client. Thank you, Your Honor.